**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

ERROL DUKE MOSES,                    )
                                     )
                Petitioner,          )
                                     )
        v.                           )        1:03CV910
                                     )
GERALD BRANKER, Warden, Central      )
Prison, Raleigh, North Carolina,     )
                                     )
                Respondent.          )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Errol Duke Moses ("Petitioner") seeks relief from a prior
judgment of this Court pursuant to Rule 60(b) of the Federal Rules
of Civil Procedure. (Docket Entry 58.) Respondent has filed a
motion to dismiss Petitioner's motion on the grounds that it
constitutes a successive petition for a writ of habeas corpus,
which requires pre-filing authorization ("PFA") from a three-judge
panel of the United States Court of Appeals for the Fourth Circuit.
(Docket Entry 60.) Petitioner has responded to Respondent's motion
(Docket Entry 65) and the time for any reply has passed without any
reply. (See Docket Entries dated Nov. 18, 2011, to present). For
the reasons that follow, Petitioner's Motion for Relief from
Judgment constitutes a successive § 2254 petition for a writ of
habeas corpus for which Petitioner must obtain PFA. Accordingly,
it is recommended that the Motion for Relief from Judgment be
transferred to the Fourth Circuit pursuant to 28 U.S.C. § 1631.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Following his conviction for two counts of murder and the imposition of a death sentence, Petitioner appealed, whereupon the North Carolina Supreme Court affirmed his convictions and sentence. See State v. Moses, 350 N.C. 751, 517 S.E.2d 853 (1999).  The United States Supreme Court denied Petitioner's petition for certiorari.  Moses v. North Carolina, 528 U.S. 1124 (2000).

On September 15, 2000, Petitioner filed a Motion for Appropriate Relief ("MAR") in the Superior Court of Forsyth County. (Docket Entry 12, Tab 5.)  Petitioner later filed an Amendment to his MAR.  (Id., Tab 7.)  In orders dated August 17, 2001, and September 6, 2001, the court denied the MAR.  (Id., Tabs 9, 11.) The North Carolina Supreme Court denied review of the MAR orders. State v. Moses, 356 N.C. 442, 573 S.E.2d 160 (2002).  On April 7, 2003, the United States Supreme Court denied a petition for writ of certiorari to review the state court's denial of Petitioner's MAR claim that challenged the use of short-form murder indictments. (Docket Entry 12, Tab 17.)

Petitioner next filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254.  (Docket Entry 6.) Petitioner raised two constitutional claims, alleging violations of his Sixth Amendment right to the effective assistance of counsel. (Id. at 5-6.)  On July 27, 2005, United Stated Magistrate Judge Russell A. Eliason recommended denial of the petition for writ of

habeas corpus. (Docket Entry 30.) By order dated October 18, 2005, United States District Judge William L. Osteen, Sr. adopted Magistrate Judge Eliason's recommendation and denied the petition. (Docket Entry 36.) The Fourth Circuit affirmed the denial of the petition for writ of habeas corpus and denied rehearing. Moses v. Branker, No. 06-8, 2007 WL 3083548 (4th Cir. Oct. 23, 2007) (unpublished). The United States Supreme Court denied certiorari. Moses v. Branker, 554 U.S. 924 (2008).

Petitioner filed a third MAR in Forsyth County Superior Court on October 1, 2009. (Docket Entry 58, Attach. 1.)[1] The Superior Court conducted an evidentiary hearing on March 18, 2010, and denied the motion by order dated July 9, 2010. (Id., Attach. 2.) The North Carolina Supreme Court denied a petition for certiorari on March 10, 2011. State v. Moses, ___ N.C. ___, 706 S.E.2d 246 (2011).

On September 23, 2011, Petitioner filed the present motion for relief from judgment, pursuant to Fed. R. Civ. P. 60(b)(6), or, in the alternative, Rule 60(d)(3). (Docket Entry 58.)

At Petitioner's trial, Casey McCree implicated Petitioner in the murders of both Jacinto Dunkley and Ricky Griffin. (See

---

[1] Petitioner had previously filed a second MAR in state court which is not relevant to this action. (See Docket Entry 34, Ex. 1.) This second MAR raised a claim of ineffective assistance of trial counsel for an alleged failure to investigate and present mitigation evidence. (Id.) The second MAR was denied from the bench on December 20, 2005; a written order followed on March 3, 2006. (See Docket Entry 58, MAR III, ¶ 8.) The North Carolina Supreme Court denied the Petition for Writ of Certiorari from this order on November 16, 2006. (Id.)

generally Docket Entry 12, Trial Tr. 243-59, 790-93.)[2]  Prior to

trial, defense counsel sought, through discovery, any information

regarding a promise of a deal made by the State in exchange for

McCree's testimony. (Id., Attach. 11, Mot. Disc. Impeaching Info.)

The State did not provide any such information before trial. (See

Docket Entry 58, Attach. 12, ¶ 8.)  At trial, McCree testified that

he had no deal with the State and that the State had not offered

him anything in return for his testimony. (Trial Tr. 803, 874-75.)

The lead detective on the case, Mike Barker, likewise testified

that the State had not offered "anything" to McCree. (Trial Tr.

1108-09.)  During closing argument, Assistant District Attorney

("ADA") Vincent Rabil stated: "There is absolutely no evidence of

any deal with Casey McCree, ladies and gentlemen.  None.  That is

pure speculation.  There is no evidence of that." (Trial Tr. 1233-

34.)

    In Petitioner's first MAR, he alleged that (1) the State had

created a false impression that it reserved the right to prosecute

McCree notwithstanding his testimony; and (2) trial counsel was

ineffective for failing to adequately cross-examine State witnesses

concerning the nature and extent of any promises made to McCree by

the Winston-Salem Police Department, the District Attorney's

Office, or any other governmental agency. (See Docket Entry 12,

<hr>

[2]  The trial transcript appears in the state court documents filed
by the State in Support of its Answer to the Petition for Writ of Habeas
Corpus. (Docket Entry 12.)  It will be referred to as "Trial Tr."

Tab 7, MAR I, September 15, 2000, Claims V-VI.)  In response, the State presented affidavits from Detective Barker, Detective Mike Rowe, ADA Rabil, and McCree.  Detectives Barker and Rowe denied knowledge of any deal with McCree. (See Docket Entry 58, Attach. 7, 10.)  In his affidavit, dated January 29, 2001, ADA Rabil stated that "[n]o promises or inducements or deals were ever made by the [State] to Casey McCree in return for any statements he made" to detectives and McCree "never asked [ADA Rabil] for immunity or any deal." (Id., Attach. 8, ¶¶ 4, 5.)  ADA Rabil further stated that at some point prior to trial Detective Barker called him and, at McCree's request, inquired about "immunity." (Id. ¶ 6.)  ADA Rabil stated that he told Detective Barker that the State would not grant immunity from anything to McCree because he had already made statements to Detectives Barker and Rowe without promise of deals or immunity. (Id.)  According to his 2001 affidavit, ADA Rabil was not asked again about immunity for McCree. (Id.)

In his affidavit dated January 30, 2001, Casey McCree stated that he "was never offered immunity" and no promises were made to him in exchange for his statements or testimony in the Dunkley and Griffin murder cases. (Id., Attach. 9.)  McCree also confirmed that several months after he gave his statements to the police he asked Detective Barker about "getting immunity" and that, after checking with the prosecutors, Detective Barker told McCree that he

5

would not receive immunity because he had already cooperated and made several statements "without a grant of immunity." (Id.)

In response to the first MAR, the State also submitted the affidavit of J. Clark Fischer, one of Petitioner's trial attorneys. (Id., Attach. 12.)[3] In his affidavit, Fischer stated that he "had no evidence that the State had entered into any deal or agreement with Casey McCree in exchange for his testimony at trial" and that McCree, Barker and Rowe were not going to admit under cross-examination that any deal in fact existed. (Id. ¶ 8.) The first MAR court found no evidence in the record of any agreement or deal made in exchange for McCree's testimony. (Id., Attach. 14, Amended Order denying MAR, Oct. 12, 2001.)

Petitioner's habeas counsel met with Rabil[4] on April 30, 2009. (Id., Attach. 3, MAR Tr. at 25.)[5] Counsel's written notes from this meeting show that, for the first time, Rabil stated there was "no deal" but that the prosecutors told McCree that he would have to "trust them" that he would not be charged if he testified. (Id., Attach. 15.) Following this meeting, Petitioner's attorneys

_____

[3] Mr. Fischer also served as Petitioner's appellate counsel in his direct appeal. (Docket Entry 58, Attach. 12, ¶ 1.)

[4] At the time of this meeting, Rabil no longer served as an ADA. (Id., Attach. 23.) By the time of the evidentiary hearing in 2010, Rabil was employed as an Assistant Capital Defender for the State of North Carolina. (Id., Attach. 3, MAR Tr. at 11.)

[5] The page numbers cited from the MAR Transcript correlate to the original transcript pages, rather than the Docket Entry 58 exhibit page numbers which are sequential through several different documents attached to the Motion for Relief from Judgment.

provided Rabil with a written summary of their notes from the meeting and a draft affidavit for Rabil to consider. (<u>Id.</u>, Attachments 16-23, E-mails between Ken Rose and Rabil.) Rabil made several changes to the notes but he did not change the section containing his declaration that he had told McCree that he would just have to trust Rabil that McCree would not be prosecuted if he testified. (<u>Id.</u>, Attach. 3, MAR Tr. at 27-30.) Subsequently, in July 2009, Rabil signed a sworn affidavit in which he stated: "[McCree] was never charged but there was no deal. We just told [McCree] that he would have to trust us that he would not be charged if he testified." (<u>Id.</u>, Attach. 25.)

Based on Rabil's affidavit, counsel prepared a draft third MAR and provided a courtesy copy to Rabil before filing. (<u>Id.</u>, Attachments 26, 27.) Rabil then informed Petitioner's post-conviction counsel that he wanted to make one change to his July 2009 affidavit; specifically, the change read "Casey was never charged and there was no *written* deal." (<u>Id.</u>, Attach. 28, Rabil Supp. Aff. (emphasis added).).[6] Rabil did not change the part of

_____

[6] As relevant here, this September 2009 affidavit from Rabil reads:

I later met with [McCree] at least one other time outside the hospital at his home and talked with him by phone. [McCree] asked if he could get a "letter of immunity." I recall telling him that he was not charged with anything, that he had already told us what happened. [McCree] was never charged and there was no written deal. Without complying with the North Carolina statutory requirements for an official grant of immunity I did not believe any legal reason existed which would have prevented another prosecutor or law enforcement officer from later charging him. I told [McCree] that he

7

his statement where he told McCree that he would have to trust them that he would not be charged if he testified. (<u>Id.</u> ¶ 3.)

In the third MAR, filed on October 1, 2009, Petitioner alleged that Rabil's affidavit showed that a promise of immunity was made to Casey McCree. (<u>Id.</u>, Attach. 27, MAR III ¶ 17.) Petitioner alleged that he could not have discovered the factual predicate for his motion because the State actively and deceptively hid the promise of immunity made to McCree. (<u>Id.</u> ¶ 19.)

The state MAR court held an evidentiary hearing in 2010. (<u>Id.</u>, Attach. 3, MAR Tr.) Rabil and McCree both testified. (<u>Id.</u> at 11, 96.) Rabil testified that he had no deal with McCree and that he never took any formal steps, as required under North Carolina law, to offer immunity to McCree. (<u>Id.</u> at 61.) Rabil specifically disavowed the facts suggesting that he told McCree that he would just have to trust them (the prosecutors) that he (McCree) would not be charged if he testified. (<u>Id.</u> at 67.) Rabil testified that he never verbally stated to McCree that he would just have to trust them that he would not be charged, though Rabil acknowledged that his 2009 affidavit reads otherwise. (<u>Id.</u> at 66, 71.) Rabil stated that those words used in the affidavit reflected

---

would have to "trust us" that he would not be charged if he testified. In my experience, this was a common practice among prosecutors to obtain testimony without having to formally agree to a deal where no formal grant of immunity was being offered.

(Docket Entry 58, Attach. 28.)

his "subjective thoughts," not what he actually told McCree. (<u>Id.</u> at 72.) When asked by the court how to reconcile his 2001 affidavit with his 2009 affidavit, as well as his testimony in the hearing, Rabil acknowledged the conflict and merely stated that he could not really explain it other than to say that when he "said 'you just have to trust us,' [he] was just stating the obvious about someone who was going to testify without immunity or a deal." (<u>Id.</u> at 79-80.)

Rabil's co-counsel, David Spence, testified that he was not aware of any deal made between the State and McCree for McCree's testimony. (<u>Id.</u> at 88-90.) Similarly, McCree testified, consistent with his previous testimony, that he received no deal in exchange for his testimony. (<u>Id.</u> at 97, 101.)

The MAR court found "no credible evidence . . . that promises were made to Mr. McCree by anybody that he would not be charged if he did not testify." (<u>Id.</u>, Attach. 2, MAR Order at 16.) Moreover, the court specifically found the testimony of both McCree and Spence credible and relied on it, rather than any evidence from Rabil. (<u>Id.</u> at 16, 18.) The court went on to hold that Petitioner had "failed to establish that there existed any 'deal' or agreement, secret or otherwise, between Mr. Rabil and Mr. McCree for the testimony of Mr. McCree at Defendant's trial." (<u>Id.</u> at 28.) The court further concluded that Petitioner had not established a violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963),

9

and, furthermore, that Petitioner had not met the requirements under North Carolina law for obtaining a new trial based on newly discovered evidence. (<u>Id.</u> at 32-36.) The court dismissed the MAR on July 9, 2010. (<u>Id.</u> at 40-41.)

## II. RULE 60(b) MOTION OR SECOND/SUCCESSIVE HABEAS PETITION

As a threshold matter, this Court must determine whether Petitioner's instant Rule 60(b) motion constitutes an unauthorized and successive § 2254 petition attacking Petitioner's conviction or sentence. If so, this Court lacks jurisdiction to consider it. On the other hand, if the filing qualifies as a proper motion under Rule 60(b) on the grounds that extraordinary circumstances require relief, this Court has jurisdiction to consider the motion.

Federal Rule of Civil Procedure 60(b) "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances, including fraud, mistake, and newly discovered evidence." <u>Gonzalez v. Crosby</u>, 545 U.S. 524, 528 (2005). Petitioner here relies on Rule 60(b)(6), which permits a party to seek relief from a final judgment, and request reopening of his case, "when the movant shows any . . . reason justifying relief from the operation of the judgment" other than the more specific reasons enumerated in Rule 60(b)(1)-(5).[7]

---

[7] Rule 60(b) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party. . . from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been

A Rule 60(b) movant faces several procedural requirements. First, a party seeking relief under Rule 60(b) must "have a meritorious claim or defense and . . . the opposing party [must] not be unfairly prejudiced by having the judgment set aside." Aikens v. Ingram, 652 F.3d 496, 501 (4th Cir. 2011). Second, a Rule 60(b) motion must be filed within a "reasonable time." Fed. R. Civ. P. 60(c). Additionally, relief under the catch-all provision of Rule 60(b)(6) may be granted only in "extraordinary circumstances." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864 n.11 (1988). "Extraordinary circumstances [are those] that create a substantial danger that the underlying judgment was unjust." Murchison v. Astrue, Nos. 10-1200, 11-1462, 2012 WL 475581, at *3 (4th Cir. Feb. 15, 2012) (unpublished) (internal quotation marks and citations omitted).

Rule 60(b)(6) and Rule 60(b)(1)-(5) are mutually exclusive; where a claim could arise under sub-sections (b)(1)-(5), a movant may not invoke the broader "any reason that justifies relief" clause of Rule 60(b)(6). Id. Finally, a Rule 60(b) motion may not

discovered in time to move for a new trial under Rule 59(b); (3) fraud . . ., misrepresentation, or misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

serve as a substitute for raising issues in an appeal from the judgment.  <u>Aikens</u>, 652 F.3d at 501.

The interplay between Rule 60(b) and the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244, creates additional tension in this case.  The Federal Rules of Civil Procedure apply to habeas proceedings only to the extent that they are not inconsistent with any statutory provisions or the rules governing habeas cases.  Rule 11, Rules Governing Section 2254 Cases.  AEDPA restricts state prisoners' ability to file successive applications for habeas relief under 28 U.S.C. § 2254 by requiring that a petitioner obtain the approval of the appropriate court of appeals before filing a second or successive habeas petition.  <u>See</u> 28 U.S.C. § 2244(b).[8]

---

[8]  Section 2244 provides, in relevant part:

(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless –
　　　(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
　　　(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
　　　(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3)(A) Before a second or successive application permitted by this

12

The limitations of § 2244(b) apply only to a "habeas application under §2254," _i.e._, an application on "behalf of a person in custody pursuant to the judgment of a State court," 28 U.S.C § 2254(b)(1). Both the text of § 2254 and the relief it provides indicate that the term "second or successive" applies to the judgment challenged. In this regard, the United States Supreme Court has held that for purposes of § 2244(b), "an 'application' for habeas relief is a filing that contains one or more 'claims.'" <u>Gonzalez</u>, 545 U.S. at 530. A "claim" is "an asserted federal basis for relief from a state court's judgment of conviction." <u>Id.</u> For example, a motion attacking the federal court's merits resolution of a previously raised claim qualifies as a "claim" under § 2244(b). <u>Id.</u> Likewise, a motion seeking to add a new ground for relief represents a "claim" under § 2244(b). <u>Id.</u>

Prior to <u>Gonzalez</u>, some courts held that any motion labeled as one pursuant to Rule 60(b) remains fully viable in the habeas context and unaffected by the limitations of AEDPA, whereas others treated any motion under Rule 60(b) as a second or successive habeas petition even if the motion contained no constitutional claim at all. <u>Compare, e.g.</u>, <u>Rodriquez v. Mitchell</u>, 252 F.3d 191, 198 (2d Cir. 2001) (holding that motion pursuant to Rule 60(b), brought after district court's ruling on initial habeas petition,

_____

section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

13

does not constitute second or successive habeas petition), with Lopez v. Douglas, 141 F.3d 974, 975 (10th Cir. 1998) (ruling that successive petition restrictions contained in 28 U.S.C. § 2244(b) apply to Rule 60(b) motions), and McQueen v. Scroggy, 99 F.3d 1302, 1335 (6th Cir. 1996) (agreeing with view that Rule 60(b) motion in habeas context is "practical equivalent of a successive habeas corpus petition"). To a great extent, Gonzalez clarified the relationship between § 2244 and Rule 60(b).

Specifically, the Supreme Court held that § 2244(b)'s standards apply to a filing labeled as a Rule 60(b) motion if the motion contains a "claim" within the meaning of § 2244 – that is, "an asserted federal basis for relief from a state court's judgment of conviction." Gonzalez, 545 U.S. at 530. The Supreme Court noted that a purported Rule 60(b) motion which neither adds a new ground for relief, nor attacks a federal court's prior resolution of grounds for relief on the merits, but rather raises some defect in the integrity of the federal proceedings, presents a viable "claim" for purposes of Rule 60(b). Id. at 532. In other words, a habeas petitioner's post-judgment filing constitutes a permissible Rule 60(b) motion if "it does not assert, or reassert, claims of error in the movant's state conviction." Id. at 538.

The plain language of Rule 60(b) states that a court may relieve a party from a "final judgment, order or proceeding." Therefore, this Court first must identify the judgment from which

14

Petitioner seeks relief. Clearly, Petitioner seeks relief from the Order entered by Judge Osteen adopting Magistrate Judge Eliason's Recommendation and dismissing all claims in the petition for writ of habeas corpus. However, Petitioner does not attack "some defect in the integrity of the federal habeas proceedings;" rather, he argues that the state court conviction was obtained under deceptive or fraudulent circumstances. In the present procedural context, this Court does not have jurisdiction to correct an error made in the state court proceeding.

In essence, Petitioner seeks to bring a new claim (which this Court did not address in the first habeas proceeding) challenging the state court conviction on the merits. As such, Petitioner's Rule 60(b) motion constitutes a successive habeas petition for which he must obtain pre-filing authorization from the Fourth Circuit. Put another way, Petitioner's Rule 60(b) motion represents a new collateral attack on the underlying criminal conviction in state court, in which Petitioner asserts a federal basis for relief from the state court's judgment of conviction. Although labeled a Rule 60(b) motion, such a filing more properly qualifies as a successive habeas petition.

Petitioner objects to the State's motion to dismiss on the grounds of successiveness, arguing that "fraud on the federal habeas court" is an example of an issue identified in Gonzalez as going not to the merits but rather to "the integrity of the habeas

15

proceedings." (Docket Entry 65, Pet. Resp. to Mot. to Dismiss 3.) However, Petitioner has pointed to no defect in the integrity of the *federal habeas proceedings* that would render his Rule 60(b) motion permissible. The issue of whether or not the State withheld evidence of a "secret deal" simply was neither raised nor addressed in the prior habeas action.

The order in the prior habeas matter addressed two substantive issues in the context of an ineffective assistance of counsel claim.[9] In his first claim, Petitioner contended that he was denied his Sixth Amendment right to the effective assistance of counsel because his trial counsel allegedly conceded guilt to first-degree felony murder with regard to the Dunkley murder count without Petitioner's consent. (Docket Entry 6 at 5.) Magistrate Judge Eliason discussed the procedural bar issue but went on to address the merits of the claim, finding that Petitioner had shown neither deficient performance on the part of trial counsel nor prejudice from counsel's actions. (Docket Entry 30 at 23-25.)

Petitioner's second ineffective assistance of counsel claim alleged failure by counsel to adequately investigate and present mitigation evidence during the sentencing phase of the trial. (Docket Entry 6 at 6.) Magistrate Judge Eliason noted that

---

[9] Petitioner included three grounds for relief in his first habeas petition. However, as noted by Magistrate Judge Eliason, grounds one and two in the petition involved the same claim. Ground one addressed a threshold procedural default issue, while ground two addressed the same claim on the merits. (See Docket Entry 30 at 11 n.1.)

Petitioner had drastically broadened this claim in federal court from the claim he had raised before the state MAR court regarding his trial counsel's failure to call specific witnesses in mitigation. (Docket Entry 30 at 27, 29-30.) In the federal claim, Petitioner alleged a broad failure to investigate his childhood, as well as failure to present evidence of his allegedly redeeming character traits. (See, e.g., Docket Entry 13 at 22, 27-32.) Magistrate Judge Eliason found that the majority of this ineffective assistance claim was not "fairly presented" to the state court and, as such, was not exhausted in state court and, therefore, procedurally barred. (Docket Entry 30 at 31-32.) Magistrate Judge Eliason thus limited his review of this claim to "the theory and facts raised in [Petitioner's] MAR." (Id. at 33.) On the merits, Magistrate Judge Eliason found that the state court's decision that Petitioner had failed to establish deficient performance and resulting prejudice was neither contrary to nor an unreasonable application of established federal law as determined by the United States Supreme Court. (Id. at 36.)

Because Petitioner's initial federal habeas application never raised the issue of the alleged secret deal made by the State with Casey McCree, his Rule 60(b) motion raises a new claim that constitutes a successive habeas application barred by AEDPA. See 28 U.S.C § 2244(b)(2). Essentially, Petitioner attacks his state court conviction because of the fraud perpetrated on the state

17

court; he does not seek to challenge any of this court's findings in the first habeas proceeding. AEDPA provides that, in order to pursue this claim, Petitioner must obtain pre-filing authorization from the Fourth Circuit, which he has not done. As such, this Court lacks jurisdiction to consider Petitioner's clearly successive habeas application.

Petitioner also asserts entitlement to relief, separate from a standard Rule 60(b) claim, pursuant to Rule 60(d)(3) based upon fraud on the court. Rule 60(d) provides, in relevant part:

> (d) **Other Powers to Grant Relief** This rule does not limit a court's power to:
>
> . . .
>
> (3) set aside a judgment for fraud on the court.

The elements of a claim of fraud upon the court are not precise. The Fourth Circuit has said that fraud upon the court is "typically confined to the most egregious cases, such as bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." Great Coastal Express v. International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., 675 F.2d 1349, 1355-56 (4th Cir. 1982). The decision in Great Coastal requires that a party asserting a "fraud upon the court" claim at the very least establish a material and deliberate fraud. Id. at 1353-56. Relief under this "savings

18

clause" of Rule 60 is not granted lightly. <u>Id.</u> at 1356.
Independent actions seeking to vacate a judgment are reserved for
"'injustices which, in certain instances, are deemed sufficiently
gross to demand a departure' from rigid adherence to the doctrine
of res judicata" and therefore are available only to prevent a
grave miscarriage of justice. <u>United States v. Beggerly</u>, 525 U.S.
38, 46-47 (1998) (quoting <u>Hazel-Atlas Glass Co. v. Hartford-Empire
Co.</u>, 322 U.S. 238, 244 (1944)).

Petitioner contends that Rabil's actions rise to the most
egregious level of fraud, "fraud which does or attempts to, defile
the court itself, or is a fraud perpetrated by officers of the
court so that the judicial machinery can not perform in the usual
manner its impartial task of adjudging cases that are presented for
adjudication," <u>Great Coastal</u>, 675 F.2d at 1356. (<u>See</u> Docket Entry
65 at 3.) The procedural posture of this case differs from that of
<u>Great Coastal</u>, however, in that the federal court was defrauded in
that case. Here, Petitioner complains of fraud perpetrated on the
state court. Moreover, the state MAR III court specifically found
Rabil's testimony regarding what he told McCree not credible and
relied instead on other evidence in resolving this claim. Because
Petitioner has failed to show fraud that threatens the integrity of
this Court, the savings clause of Rule 60(d)(3) does not apply.

A court confronting an unauthorized successive petition for
habeas corpus has two options. First, a court may dismiss the

filing outright for want of jurisdiction and require the petitioner to file a motion in the proper court of appeals for PFA under section 2244(b)(3)(A). Second, the court may transfer unauthorized successive petitions to the proper court of appeals under 28 U.S.C. § 1631. This section provides that, "[w]henever [a] . . . court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed. . . ." Thus, § 1631 permits transfer only when three conditions are met. First, the transferring court must lack subject matter jurisdiction. <u>Id.</u> Second, at the time of the filing, the transferee court could have considered the filing. Third, the proposed transfer must be "in the interest of justice." <u>Id.</u> The district court has discretion to resolve these matters in this context. <u>See</u> <u>Jones v. Braxton</u>, 392 F.3d 683 (4th Cir. 2004) (declining to adopt blanket policy requiring district courts to automatically transfer all unauthorized successive habeas petitions).

Here, the first two requirements for transfer are clearly met. Because the petition in this case constitutes a successive habeas petition for which no PFA was obtained, this Court lacks jurisdiction. Additionally, Petitioner could have filed a motion for PFA originally in the Fourth Circuit. The only issue here, then, concerns whether transfer under the unique circumstances of

20

this case would appropriately serve the interests of justice. Courts have recognized several factors for consideration in this regard, including whether the claim would be time-barred if re-filed in the proper forum; whether the claims are likely to have merit; whether the claim was filed in good faith; and whether it was clear at the time of the original filing that the court lacked the requisite jurisdiction. <u>See, e.g.</u>, <u>In re Cline</u>, 531 F.3d 1249, 1251 (10th Cir. 2008).

Petitioner here has presented circumstances which support a transfer "in the interest of justice." Petitioner's claim involves information which he did not have available to him at the time of his first habeas action and it appears that Petitioner made the filing in good faith. Further, Petitioner's claim may be time-barred under § 2244(d) if, after dismissal of this action, he obtains a PFA from the Fourth Circuit and then files the action again in the district court.

### III. CONCLUSION

Petitioner's instant filing does not come within the reach of Federal Rule of Civil Procedure 60(b) or (d). However, the interest of justice warrants transfer rather than dismissal.

**IT IS THEREFORE RECOMMENDED** that:

(1) Petitioner's Motion for Relief from Judgment (Docket Entry 58) be construed as a Successive Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254; and

21

(2) Petitioner's Motion be **TRANSFERRED** to the United States Court of Appeals for Fourth Circuit for a determination of the propriety of pre-filing authorization.

(3) Respondent's Motion to Dismiss (Docket Entry 60) be **DENIED WITHOUT PREJUDICE** to re-filing should the Fourth Circuit Court of Appeals deny pre-filing authorization.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 17, 2012

Case 1:03-cv-00910-TDS-LPA   Document 66   Filed 07/17/12   Page 22 of 22